UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENNIS C. HISLE,<br>Plaintiff,<br>v.<br>MARLYN CONANAN,<br>Defendant. | No. 1:21-cv-01680-KES-SAB (PC)<br>FINDINGS AND RECOMMENDATION REGARDING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT<br>(ECF No. 65) |

Plaintiff is proceeding pro se and in forma pauperis in this civil rights action filed pursuant to 42 U.S.C. § 1983.

Currently before the Court is Defendant's motion for summary judgment, filed November 3, 2025.

**I.**

**BACKGROUND**

This action is proceeding against Defendant Marlyn Conanan for deliberate difference for "falsification of medical records, failure to provide Plaintiff a lay in, and failure to urgently refer Plaintiff to a pulmonologist." (ECF No. 6 at 4:8-10.)

Defendant filed an answer to the complaint on March 3, 2023. (ECF No. 29.) On April 7, 2023, the Court issued the discovery and scheduling order. (ECF No. 34.)

Defendant filed a motion for summary judgment on November 3, 2025. (ECF No. 65.) Plaintiff filed a timely opposition on December 29, 2025, and Defendant filed a reply on January 13, 2026. (ECF Nos. 70, 71.)

## II.

## LEGAL STANDARD

### A. Summary Judgment Standard

Any party may move for summary judgment, and the Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) (quotation marks omitted); Washington Mut. Inc. v. U.S., 636 F.3d 1207, 1216 (9th Cir. 2011). Each party's position, whether it be that a fact is disputed or undisputed, must be supported by (1) citing to particular parts of materials in the record, including but not limited to depositions, documents, declarations, or discovery; or (2) showing that the materials cited do not establish the presence or absence of a genuine dispute or that the opposing party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1) (quotation marks omitted). The Court may consider other materials in the record not cited to by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3); Carmen v. San Francisco Unified Sch. Dist., 237 F.3d 1026, 1031 (9th Cir. 2001); accord Simmons v. Navajo Cnty., Ariz., 609 F.3d 1011, 1017 (9th Cir. 2010).

In judging the evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007) (quotation marks and citation omitted), and it must draw all inferences in the light most favorable to the nonmoving party and determine whether a genuine issue of material fact precludes entry of judgment, Comite de Jornaleros de Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 942 (9th Cir. 2011) (quotation marks and citation omitted).

In arriving at these findings and recommendations, the Court carefully reviewed and considered all arguments, points and authorities, declarations, exhibits, statements of undisputed facts and responses thereto, if any, objections, and other papers filed by the parties. Omission of reference to an argument, document, paper, or objection is not to be construed to the effect that this

Court did not consider the argument, document, paper, or objection. This Court thoroughly reviewed and considered the evidence it deemed admissible, material, and appropriate.

**III.**

**DISCUSSION**

**A. Summary of Plaintiff's Complaint**

Dr. Marlyn Conanan admitted Plaintiff suffered a serious physical injury that required medical need, and despite that professional knowledge that he required rest to prevent further injury and heal from his rib fractures, he failed to ensure Plaintiff received an activity modification/lay in order.

On May 12, 2016, despite the need for Plaintiff to needed rest to heal from his rib fractures, Dr. Conanan prescribed that Plaintiff was functional on the yard. Dr. Conanan falsely swore to providing Plaintiff an activity modification/lay in order on May 5, 2016, signing a request for urgent referral to a pulmonologist, and that Plaintiff did not suffer pneumonia or atelectasis under her care.

**B. Statement of Undisputed Facts**

1. At the times pertinent to the complaint, Plaintiff Dennis Hisle was an inmate at Pleasant Valley State Prison (PVSP).[1] (ECF No. 1)

2. Defendant M Conanan was one of Hisle's primary care physicians at the times pertinent to the complaint.[2] (ECF No. 1 at 2; declaration of Defendant M. Conanan in support of motion for summary judgment (Conanan Decl.) ¶ 3.)

3. In the underlying screening order, the Court found that Hisle brings a claim for deliberate indifference against Dr. Conanan for falsification of medical records, failure to provide Hisle with a lay-in, and failure to urgently refer Hisle to pulmonologist. (ECF No. 6 at 4:8-10.)

4. Hisle testified that he believed that a lay-in was medically necessary to treat his

---

[1] Plaintiff's proposed dispute is non-responsive as this fact merely establishes where Plaintiff resided at the time of the complaint.

[2] Plaintiff attempts to dispute this fact by stating that Dr. Conanan was his sole primary care provider and was solely responsible for his health care treatment; however, such dispute is not material because the material issue in this motion is Dr. Conanan's role, not whether other physicians also performed that role.

broken ribs.[3]

5. Hisle testified that he believed that he needed to see a pulmonologist to treat pneumonia, broken ribs, and a progressive lung collapse. (Faulconer Decl. ¶ 2, Ex. A, Hisle Depo. at 40:18-41:9.)

6. On April 28, 2016, Hisle was found unconscious on the day room floor. Hisle had experienced possible loss of consciousness, a head contusion, and head trauma. Treatment and Triage Area staff noted that Hisle had swelling to the back of his head and right side of his face. Staff transferred Hisle to Community Regional Medical Center in Fresno by ambulance for treatment of possible head trauma later that evening. (Conanan Decl. ¶ 3; Declaration of H. Smith, Custodian of Records from Valley State Prison (Smith Decl.), Ex. B to Faulconer Decl. ¶ 3, Ex. 1, Treatment and Triage Medical Records dated April 28, 2016.)

7. On May 2, 2016, Dr. Conanan gave Hisle a medical evaluation after his release from Community Regional Medical Center. Dr. Conanan reviewed Hisle's treatment records from the medical center. Hisle received a CT scan of his chest and abdomen when he was at the medical center, and the results of those tests were normal and did not indicate that he had any fractured ribs. The medical center provided a differential diagnosis that could include pneumonia; however, a differential diagnosis is not an actual diagnosis because a differential diagnosis is meant to assess other explanations for a patient's symptoms. During his appointment with Dr. Conanan, Hisle was alert and oriented but complained of pain in his right chest below his rib cage and stated he heard a popping noise and thought he had pneumonia. Dr. Conanan evaluated Hisle, including his temperature, oxygenation, pulmonary condition, and other factors, but did not believe that Hisle presented with broken ribs or pneumonia. Based on Hisle's report of chest pain, Dr. Conanan ordered a chest x-ray and scheduled him for a follow-up appointment. Hisle testified that he saw Dr. Conanan on May 2, 2016, and that the summary of the record was accurate. (Conanan Decl. ¶ 4; Smith Decl., Ex. B to Faulconer Decl., ¶ 3, Exhibit 2, Medical Progress Note dated May 2, 2016; Faulconer Decl., ¶ 2, Ex. A, Hisle Depo. at 47:3-49:14.)

---

[3] Although Plaintiff attempts to dispute this fact by stating his opinion is not relevant to the legal determination at issue in this motion, the testimony speaks for itself. (Declaration of John Faulconer (Faulconer Decl.) ¶ 2, Ex. A, Deposition Transcript of Plaintiff Dennis Hisle (Hisle Depo.) at 34:5-9.)

8. On May 9, 2016, Mr. Hisle refused to take pain medication and signed a form that he knowingly rejected the medication. Hisle testified that he refused the medication to know whether it was hiding something he should know about. (Conanan Decl. ¶ 7; Smith Decl., Ex. B to Faulconer Decl., ¶ 3, Ex. 5, Hisle Refusal of Treatment form dated May 9, 2016; Faulconer Decl., ¶ 2, Ex. A, Hisle Depo. at 57:19-58:11.)

9. On May 12, 2016, Dr. Conanan had a follow-up appointment to check on the progress of Hisle's rib fractures. Dr. Conanan performed an evaluation and found that Hisle was alert and oriented to time, place, and date, was ambulatory, had no shortness of breath, no nausea or vomiting, was able to talk in complete sentences, didn't have a fever, was oxygenating normally, and did not have nausea or vomiting. Dr. Conanan conducted an examination of Mr. Hisle's pulmonary system. Hisle reported right subcoastal pain, pain when he took deep breaths, and experienced an occasional cough with thick mucus. Due to Hisle's pain complaints, Dr. Conanan ordered another x-ray to determine if the rib fractures were healing and directed him to continue taking his prescribed pain medications. Dr. Conanan determined that Hisle was functional on the prison yard. Dr. Conanan determined that Hisle's physical symptoms were not consistent with pneumonia. Dr. Conanan scheduled Hisle for a follow-up appointment on May 19, 2016. Hisle testified that he did see Dr. Conanan on May 12, 2016, and agreed that he reported pain, breathing issues, and coughing mucus, that he received a Z-Pak, that he was ambulatory, was provided treatment for his pain, and was ordered another x-ray, but believed that Dr. Conanan's course of care regarding his rib injury was not appropriate. (Conanan Decl. ¶ 8; Smith Decl., Ex. B to Faulconer Decl., ¶ 3, Ex. 6, Medical Progress Note dated May 12, 2016; Faulconer Decl., ¶ 2, Ex. A, Hisle Depo. at 59:15-61:25.)

10. Dr. Conanan did not treat Hisle on May 20, 2016, but Hisle met with Dr. J. George in the Treatment and Triage Area and reported additional symptoms, including "mild" shortness of breath, a "thump" over his ribs, "chills," and "night sweats," that were not reported on May 19. Dr. George had Mr. Hisle transported to Mercy Hospital for a pulmonary evaluation to "rule out pneumonia." Based on Dr. Conanan's experience and practice as a primary care physician, the indication to "rule out pneumonia" does not mean that the patient has been diagnosed with

pneumonia. Rather, it indicates that Dr. George wanted a second opinion from a specialist as to whether Hisle had pneumonia. Based upon Dr. Conanan's pattern and practice, when she orders a patient to be transferred, the physician on duty at time of the actual transfer would sign the transfer, not necessarily order the transfer. Based upon the medical records and that pattern of practice, it appears that Dr. George's transfer was facilitating Dr. Conanan's referral. Hisle testified that he was sent to see a pulmonologist on May 20, 2016, and that he was diagnosed with pneumonia upon his arrival at the hospital in May 2016, and might have received a pneumonia diagnosis prior to that time. (Conanan Decl. ¶ 11; Smith Decl., Ex. B to Faulconer Decl. ¶ 3, Ex. 9, Medical Order and Progress Note by Dr. George dated May 20, 2016; Faulconer Decl., ¶ 2, Ex. A, Hisle Depo. at 35:8-20, 63:6-12.)

11. Dr. Conanan is aware that Hisle has accused her of being deliberately indifferent to his serious medical needs and falsifying medical records and denies those claims. (Conanan Decl. ¶ 13.)

12. Hisle testified that on May 12, 2016, despite being in pain, that he was walking around because "[he] had to. [He] wasn't under a lay-in. [He] had to." (Faulconer Decl. ¶ 2, Ex. A, Hisle Depo. at 23:19-25, 59:15-60:5.)

13. Hisle testified that before he was transferred from PVSP on May 20, 2016, Hisle met with an unnamed radiologist who contacted his supervisor because of the seriousness of his condition which was being seemingly being ignored by his primary care provider. Hisle also testified that by May 19, 2016, he was in severe distress. (Faulconer Decl. ¶ 2, Ex. A, Hisle Depo. at 62:14-20; 64:20-66:6.)

14. On January 13, 2020, Hisle submitted a CDCR 602 grievance regarding the allegations of this lawsuit. (Smith Decl., Ex. B to Faulconer Decl., ¶ 3, Ex. 10, CDCR 602 grievance by Hisle dated January 13, 2020.)

15. On January 14, 2020, Hisle was issued a letter directing him to resubmit his grievance as a medical grievance. (Smith Decl., Ex. B to Faulconer Decl. ¶ 3, Ex. 11, Appeals Letter regarding grievance dated January 14, 2020.)

16. On January 27, 2020, Hisle submitted a Health Care grievance regarding the

allegations of this lawsuit. (Smith Decl., Ex. B to Faulconer Decl., ¶ 3, Ex. 12, Health Care Grievance by Hisle dated January 27, 2020.)

17. On June 3, 2020, a California Correctional Health Care Services Headquarters response regarding Hisle's medical grievance indicated that no intervention would be taken. and that Hisle's administrative remedies had been exhausted. (Smith Decl., Ex. B to Faulconer Decl. ¶ 3, Ex. 13, California Correctional Health Care Services Headquarters' Level Response dated June 3, 2020.)

18. Hisle is serving a term with the possibility of parole. Faulconer Decl. ¶ 2, Ex. A, Candler Depo. at 18:19-20.)

**C. Analysis of Defendant's Motion**

Defendant argues: (1) Plaintiff's claim fails as a matter of law; (2) the evidence establishes that a lay-in is treatment for broken ribs and a referral to a pulmonologist is treatment for possible pneumonia and the allegations amount to nothing more than a difference of opinion; (3) the claims violate the applicable statute of limitations; and (4) she is entitled to qualified immunity.

In opposition, Plaintiff argues that his claims could not have accrued until he received records in which Dr. Conanan claimed to have provided him with a lay-in or referral to a pulmonologist. (ECF No. 71 at 3-4.) Plaintiff also argues the failure to provide a lay-in or referral to a pulmonologist amounted to deliberate indifference, and Dr. Conanan is not entitled to qualified immunity.

In response, Defendant argues Plaintiff has failed to create a material dispute of fact as he concedes she provided him with medical care, including multiple evaluations, pain treatment, and Plaintiff's has failed to overcome the statute of limitations bar.

1. Statute of Limitations

Actions brought pursuant to 42 U.S.C. § 1983 are governed by the forum state's statute of limitations for personal injury actions. Jones v. Blanas, 393 F.3d 918, 927 (9th Cir. 2004). The statute of limitations for civil actions filed in California is two years, as set forth at California Civil Procedure Code Section 335.1, which is the applicable statute in section 1983 actions.

Maldonado v. Harris, 370 F.3d 945, 954 (9th Cir. 2004). The federal court also applies the forum state's law regarding tolling, including equitable tolling, when not in conflict with federal law. Hardin v. Straub, 490 U.S. 536, 537-39 (1989); Fink v. Shedler, 192 F.3d 911, 914 (9th Cir. 1999). California provides that the applicable limitations period is tolled for two years on grounds of "disability" when a litigant is incarcerated for less than a term of life. Cal. Code Civ. P. § 352.1(a). California also applies equitable tolling when a plaintiff voluntarily pursues alternative remedies where the first claim is filed within the statutory period. Garber v. City of Clovis, 698 F. Supp. 2d 1204, 1213 (E.D. Cal. 2010) (citing McDonald v. Antelope Valley Community College Dist., 45 Cal. 4th 88, 101 (2008)); Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005) (statute of limitations is tolled while prisoner completes mandatory exhaustion process).

Federal law determines when a cause of action accrues and the statute of limitations begins to run in a section 1983 action. Wallace v. Kato, 549 U.S. 384, 388 (2007); Elliott v. City of Union City, 25 F.3d 800, 801-02 (9th Cir. 1994). Under federal law, a claim generally accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. TwoRivers v. Lewis, 174 F.3d 987, 991-92 (9th Cir. 1999); Bibeau v. Pac. N.W. Research Found. Inc., 188 F.3d 1105, 1108 (9th Cir. 1999) (because a plaintiff must be diligent in discovering critical facts about his claim, one who did not know of his claim will be barred if he should have known of it in the exercise of due diligence).

"A statute of limitations is subject to the doctrine of equitable tolling; therefore, relief from strict construction of a statute of limitations is readily available in extreme cases and gives the court latitude in a case-by-case analysis." Scholar v. Pacific Bell, 963 F.2d 264, 268 (9th Cir. 1992). "The equitable tolling doctrine has been applied by the Supreme Court in certain circumstances, but it has been applied sparingly; for example, the Supreme Court has allowed equitable tolling when the statute of limitations was not complied with because of defective pleadings [or] when a claimant was tricked by an adversary into letting a deadline expire. . ." Id. Courts have been generally unforgiving, however, when a late filing is due to claimant's failure "to exercise due diligence in preserving his legal rights." Id. (citation omitted).

Here, because Plaintiff is incarcerated for a term less than life, he had four years to file his

suit. (UF 18.) Defendant argues the accrual dates of Plaintiff's claims regarding the lay-in order and referral to a pulmonologist are both in May 2016. (ECF No. 65-3 at 19.) Plaintiff argues that his could not have accrued until he reviewed records in which Defendant claimed to have provided him a lay-in or referral to a pulmonologist. In response, Defendant argues that Plaintiff's review of medical records, or information regarding Defendant's position is immaterial because Plaintiff, by his own testimony, established that he knew or had reason to know of the injuries in May 2016 which form the basis of his claims.

It is undisputed that on May 2, 2016, Dr. Conanan gave Hisle a medical evaluation after his release from Community Regional Medical Center. Dr. Conanan reviewed Hisle's treatment records from the medical center. Hisle received a CT scan of his chest and abdomen when he was at the medical center, and the results of those tests were normal and did not indicate that he had any fractured ribs. The medical center provided a differential diagnosis that could include pneumonia; however, a differential diagnosis is not an actual diagnosis because a differential diagnosis is meant to assess other explanations for a patient's symptoms. During his appointment with Dr. Conanan, Hisle was alert and oriented but complained of pain in his right chest below his rib cage and stated he heard a popping noise and thought he had pneumonia. Dr. Conanan evaluated Hisle, including his temperature, oxygenation, pulmonary condition, and other factors, but did not believe that Hisle presented with broken ribs or pneumonia. Based on Hisle's report of chest pain, Dr. Conanan ordered a chest x-ray and scheduled him for a follow-up appointment. Hisle testified that he saw Dr. Conanan on May 2, 2016, and that the summary of the record was accurate. (UF 7.)

On May 9, 2016, Mr. Hisle refused to take pain medication and signed a form that he knowingly rejected the medication. Hisle testified that he refused the medication to know whether it was hiding something he should know about. (UF 8.)

On May 12, 2016, Dr. Conanan had a follow-up appointment to check on the progress of Hisle's rib fractures. Dr. Conanan performed an evaluation and found that Hisle was alert and oriented to time, place, and date, was ambulatory, had no shortness of breath, no nausea or vomiting, was able to talk in complete sentences, didn't have a fever, was oxygenating

normally, and did not have nausea or vomiting. Dr. Conanan conducted an examination of Mr. Hisle's pulmonary system. Hisle reported right subcoastal pain, pain when he took deep breaths, and experienced an occasional cough with thick mucus. Due to Hisle's pain complaints, Dr. Conanan ordered another x-ray to determine if the rib fractures were healing and directed him to continue taking his prescribed pain medications. Dr. Conanan determined that Hisle was functional on the prison yard. Dr. Conanan determined that Hisle's physical symptoms were not consistent with pneumonia. Dr. Conanan scheduled Hisle for a follow-up appointment on May 19, 2016. Hisle testified that he did see Dr. Conanan on May 12, 2016, and agreed that he reported pain, breathing issues, and coughing mucus, that he received a Z-Pak, that he was ambulatory, was provided treatment for his pain, and was ordered another x-ray, but believed that Dr. Conanan's course of care regarding his rib injury was not appropriate. (UF 9.)

It is further undisputed that Plaintiff testified that on May 12, 2016, despite being in pain, that he was walking around because "[he] had to. [He] wasn't under a lay-in. [He] had to." (UF 12.) Thus, the evidence establishes that Plaintiff was aware that Dr. Conanan was his primary care physician as she evaluated him three times prior to May 20, 2026. Accordingly, Plaintiff's claim regarding Defendant's failure to provide him with a lay-in accrued on May 12, 2026-the date he admittedly knew he was in pain because he was forced to walk due to the lack of a lay-in order by Dr. Conanan. This finding is further supported by the fact that when he returned from the hospital after the initial incident (which occurred on April 28, 2016), he was provided a lay-in from a nurse, so he knew it was a possibility. (Hisle Depo. at 23:19-25; 59:15-60:5.) Consequently, as of May 12, 2016, Plaintiff knew or has reason to know all the necessary information to indicate that a lay-in was not provided.

With regard to the referral of a pulmonologist, it is undisputed that Plaintiff testified that he saw a pulmonologist upon his transfer from PVSP on May 20, 2016, and was diagnosed with pneumonia in May 2016-if not prior to then. (UF 10.) It is further undisputed that Plaintiff testified that he spoke with an unnamed radiologist before May 20, 2016, who contacted his (the radiologist's) supervisor because of the seriousness of Hisle's condition which was being ignored by his primary care physician (Dr. Conanan). (UF 2, 13.) Hisle testified that by May 19, 2016,

he was in severe distress. (UF 13.) Thus, by May 20, 2016, Hisle's claim regarding a referral to a pulmonologist accrued. Hisle did not need to know the specifics of his diagnosis or what the specific referral he thought he required, he just needed reason to discover his claim against Dr. Conanan. Hisle testified that, all by May 20, 2016, he was in severe distress, had a conversation with a radiologist who indicated that his condition was severe and ignored by Dr. Conanan, saw a pulmonologist after a transfer out of PVSP, and was diagnosed with pneumonia. As of the date of May 20, 2016, Hisle reasonably had all the information he needed to complete the deliberate indifference cause of action and its elements regarding the pulmonology referral issue. Further, any claim that medical records were falsified is not an individual claim and has no relevance to the analysis. See Landrigan v. City of Warwick, 628 F.2d 736 (1st Cir. 1980) (holding "the existence of a false police report ... does not by itself deprive[ ] a person of a right secured by the Constitution and its laws."); Evans v. Diaz, No. 1:22-CV-00291 ADA BAM PC, 2022 WL 17417816, at *12 (E.D. Cal. Dec. 5, 2022) (failure to state a claim for fabricated medical reasoning in medical report); Martin v. Pfeiffer, No. 1:22-CV-00889 AWI BAM PC, 2022 WL 4345686, at *8 (E.D. Cal. Sept. 19, 2022); Sanford v. Eaton, No. 1:20-CV-00792 BAM (PC), 2021 WL 1172911, at *7 (E.D. Cal. Mar. 29, 2021) (denying a claim alleging falsified medical report and statements made by Plaintiff), denying to adopt on other grounds, Sanford v. Eaton, No. 1:20-CV00792-JLT BAM(PC), 2022 WL 168530, at *2 (E.D. Cal. Jan. 19, 2022).

As Hisle had an accrual date of May 20, 2016 (allowing for the more conservative date applying to the lay-in claim as well), he had until May 20, 2020, to file his lawsuit. Because Plaintiff filed the lawsuit on November 22, 2021, 551 days after the deadline, he failed to comply with the 4-year statute of limitations.

**a. Tolling of Limitations Period**

"Equitable tolling under California law operates independently of the literal wording of the Code of Civil Procedure to suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness." Jones v. Blanas, 393 F.3d at 928 (citing Lantzy v. Centex Homes, 31 Cal.4th 363 (2003)) (cleaned up). "The purpose of California's equitable tolling doctrine 'is to soften the harsh impact of technical rules which might otherwise prevent a good

faith litigant from having a day in court.' " Id. (citing Daviton v. Columbia/HCA Healthcare Corp., 241 F.3d 1131, 1137 (9th Cir. 2001) (en banc)).

"Under California law, a plaintiff must meet three conditions to equitably toll a statute of limitations: (1) defendant must have had timely notice of the claim; (2) defendant must not be prejudiced by being required to defend the otherwise barred claim; and (3) plaintiff's conduct must have been reasonable and in good faith." Fink v. Shedler, 192 F.3d 911, 916 (9th Cir. 1999) (citation omitted); see also Lantzy, 31 Cal.4th 363 at 370 ("This court has applied equitable tolling in carefully considered situations to prevent the unjust technical forfeiture of causes of action, where the defendant would suffer no prejudice.").

Prisoners are also entitled to tolling during the exhaustion of mandatory administrative remedies. Brown v. Valoff, 422 F.3d 926, 943 (9th Cir. 2005) ("the applicable statute of limitations must be tolled while a prisoner completes the mandatory [administrative] exhaustion process" required under the Prisoner Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a)).

The first instance that Hisle raised the issue that Dr. Conanan failed to provide him a lay-in or refer him to a pulmonologist was in an opposition to a motion for summary judgment in Hisle v. Conanan, Case No. 1:17-cv-01400 DAD SAB (PC) ("Hisle I") on August 16, 2019. (ECF No. 84.) Hisle did not lodge an amended complaint regarding these allegations until March 19, 2020, but, giving Plaintiff the benefit of any doubt, the Court will use the earlier date for tolling purposes. On November 6, 2020, in Hisle I, the Court adopted findings and recommendations in full that Hisle's claims at issue were dismissed with prejudice due to a failure to exhaust his administrative remedies. (ECF No. 136.) During that time, Plaintiff submitted an administrative grievance regarding his allegations on January 13, 2020, which was fully exhausted by June 3, 2020. (UF 14, 17.) Providing Plaintiff the most conservative period of tolling, from August 16, 2019 (first time raised issues) and November 20, 2020 (when the claims were dismissed without prejudice), results in 448 days of tolling. However, the instant action was filed 551 days after the accrual, Plaintiff claims are 103 days beyond the applicable statute of limitations.

Plaintiff argues that he could not have known until July 30, 2018, at his deposition that "Dr. Conanan lied about providing a lay-in activity modification to plaintiff on 5-5-2016." (ECF

No. 71:7-11.) However, Plaintiff's lay-in claim is not whether Dr. Conanan lied about providing a lay-ion order, the claim is whether a lay-in was provided at all. Indeed, the testimony relied in support of Plaintiff's argument belies his contention. In reference to his treatment in 2016, Plaintiff stated "I was never given a lay-in at this point or any point beyond this date. So why she's got here a lay-in was given to patient, I have no idea. That isn't true, no." (ECF No. 71 at 16-17.) Thus, as of the deposition, Hisle already knew that he wasn't given a lay-in by Dr. Conanan, and when presented with evidence of a lay-in, he affirmatively denied that evidence. Plaintiff did not claim that he was unaware that a lay-in possible, or that he wasn't aware that he could have been provided that care, he testified Dr. Conanan didn't give him a lay-in. Hisle testified that in May 2016 he was in pain, that he didn't have a lay-in, and that Dr. Conanan was his primary care physician. Therefore, his claim accrued by May 20, 2016.

Plaintiff's reliance on Klein v. City of Beverly Hills, 865 F.3d 1276 (9th Cir. 2017) to establish that "the "discovery rule" requires that a claim accrues when the underlying affidavit or material evidence is made available" is inapplicable. (ECF No. 71 at 10:12-14.) Klein addresses the elements of a judicial deception claim, not deliberate indifference claim. (Id. at 1278-1279.)

**b. Relation-Back Under Rule 15**

Plaintiff argues that his claims relate back to the filing of the initial complaint in, or first amended complaint.

In certain circumstances, an amended pleading can relate back to an original pleading for purposes of the statute of limitations. See Butler v. Nat'l Cmty. Renaissance of Cal., 766 F.3d 1191, 1201-04 (9th Cir. 2014) (discussing relation back principles under federal and California law); see also Fed. R. Civ. P. 15(c). An amendment relates back if it "asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out - or attempted to be set out - in the original pleading." Fed. R. Civ. P. 15(c)(1)(B); see also Fed. R. Civ. P. 15(c)(1)(C) (amendment changing identity or name of party relates back only if Rule 15(c)(1)(B) is satisfied).

The original complaint in Hisle I was filed on October 17, 2017, and the first amended complaint was filed on November 22, 2017, and neither of them mentioned a lay-in or a pulmonologist referral. (ECF Nos. 1, 7.)

First, Rule 15(c) does not apply because the Hisle I complaint is not an "original pleading" in this case, and at the time the initial complaint in Hisle I was filed, Hisle's claims had already accrued as described above and his failure to bring the claims is his own lack of diligence.

Second, the claims re regarding a lay-in and pulmonologist referral at issue in this case, and presented within the August 16, 2019, opposition in Hisle I, did not arise out of the same conduct, transaction, or occurrence as the initial complaint in Hisle I. Rather, the allegations in this case represent discrete and separate conduct of which Plaintiff was aware since May 20, 2016. Additionally, in Hisle I, the Court ordered Hisle's allegations regarding the lay-in and pulmonological referral be dismissed as unexhausted while later finding Plaintiff's allegations regarding Dr. Conanan's care did not arise are not from the same transaction or occurrence. (ECF No. 136 in Hisle I.) Indeed, as stated in the Findings and Recommendation with regard to Defendant's prior motion to dismiss, the Court rejected Defendant's argument and disagreed with the characterization that "[a] plain reading of the compl[a]int demonstrates that Hisle's claim is based on the alleged actions of Defendants during the litigation Hisle I." (ECF No. 25 at 5:17-18.) The Court found that while "Defendant argues that Plaintiff's claim revolve around the actions taken in Plaintiff's previous case, Defendant overlooks the other allegations presented in the operative complaint." (Id. 25:7-8.)

Accordingly, Plaintiff's claims in this case do not relate back to the original filing in Hisle I, and his claims are untimely.

2. Deliberate Indifference to Serious Medical Need

As previously stated, Plaintiff contends that Dr. Conanan failed to provide him with a lay-in order and urgent referral to a pulmonologist.[4,5]

---

[4] Plaintiff also claims that his medical records were falsified. However, as explained above, there is no constitutional violation for alleged false medical records. Thus, Plaintiff's medical record evidence does not demonstrate that Dr. Conanan was deliberately indifferent to Plaintiff's medical needs. Instead, Plaintiff's opposition disputes the need for a lay-in and referral to a pulmonologist, but a difference of medical opinion between an inmate and prison medical personnel regarding appropriate medical diagnosis and treatment is not enough to establish a deliberate indifference claim. Sanchez, 891 F.2d at 242; Toguchi, 391 F.3d at 1058.

[5] Plaintiff argues that the finding and recommendations in Hisle I establish that there is a disputed fact regarding the issue of the lay-in and pulmonologist referral. However, in Hisle I, the Court recommended, at that time, that there was a dispute of fact whether Dr. Conanan provided the lay-in order or pulmonologist referral but did not reach whether those activities by Dr. Conanan established treatment or serious medical needs themselves. The evidence

A prisoner's claim of inadequate medical care constitutes cruel and unusual punishment in violation of the Eighth Amendment where the mistreatment rises to the level of "deliberate indifference to serious medical needs." Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). The two-part test for deliberate indifference requires Plaintiff to show (1) "a 'serious medical need' by demonstrating that failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain,' " and (2) "the defendant's response to the need was deliberately indifferent." Jett, 439 F.3d at 1096.

A defendant does not act in a deliberately indifferent manner unless the defendant "knows of and disregards an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "Deliberate indifference is a high legal standard," Toguchi v. Chung, 391 F.3d 1051, 1060 (9th Cir. 2004), and is shown where there was "a purposeful act or failure to respond to a prisoner's pain or possible medical need" and the indifference caused harm. Jett, 439 F.3d at 1096. In applying this standard, the Ninth Circuit has held that before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105–06). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990).

Further, a "difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference." Snow v. McDaniel, 681 F.3d 978, 987 (9th Cir. 2012) (citing Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989)), overruled in part on other grounds, Peralta v. Dillard, 744 F.3d 1076, 1082–83 (9th Cir. 2014); Wilhelm v. Rotman, 680 F.3d 1113, 1122–23 (9th Cir. 2012) (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1986)). Rather, Plaintiff "must show that the course of treatment the doctors chose was medically unacceptable under the

---

demonstrates these activities are treatment and Hisle does not offer admissible evidence to rebut Dr. Conanan's evidence.

circumstances and that the defendants chose this course in conscious disregard of an excessive risk to [his] health." Snow, 681 F.3d at 988 (citing Jackson, 90 F.3d at 332) (internal quotation marks omitted).

Construing the evidence in a light most favorable to Plaintiff, he fails to demonstrate evidence that Dr. Conanan subjectively knew and disregarded an excessive risk to Plaintiff's health and safety. Rather, Plaintiff's evidence demonstrates Dr. Conanan provided extensive treatment for his rib injuries and possible pneumonia in May 2016. Indeed, it is undisputed that Dr. Conanan evaluated him on May 2, 5, and 12, 2026. (UF 7, 9; Hisle Depo. at 51:4-53:5; 56:15-57:15.) In addition, although Plaintiff did not recall seeing Dr. Conanan on May 19, 2016, the medical records demonstrate (Smith Decl., Ex. B to Faulconer Decl. Ex. 8; Hisle Depo. at 62:14-20.) Further, Plaintiff does not dispute that he rejected pain medication during his treatment. (UF 8.) There is no evidence she purposefully and substantially failed to provide care. Although Hisle complained of similar symptoms at the evaluations, Dr. Conanan always provided medical treatment in response to Hisle's complaints. The evidence shows that Dr. Conanan provided Hisle extensive medical care, regarding his broken ribs and pulmonological issues, and provided treatment to resolve those issues. However, even if Dr. Conanan failed to provide a lay-in or pulmonologist referral she otherwise provided extensive medical care regarding the underlying serious medical needs and did not deny care.

Moreover, Plaintiff fails to address the fact that a lay-in order and referral to a pulmonologist are not a serious medical needs, but, rather, demands for specific treatment for underlying serious medical needs which is not a claim. In fact, Plaintiff himself testified that the lay-in and pulmonologist referral were meant for treatment. (UF 4, 5.) Plaintiff's belief that Dr. Conanan's treatment fell beneath the standard of care because he should have been provided different treatment is a classic example of a matter for medical judgment. Estelle v. Gamble, 429 U.S. at 107. The disagreement with and/or failure to provide specific medical treatment represents a different of opinion which is not a constitutional violation.[6] See Sanchez v. Vild, 891

[6] Failure to provide a referral can be a serious medical need under the Eighth Amendment if it is part of a pattern of conscious disregard for a substantial risk to health. However, the referral is not itself a constitutional violation — the

F.2d 242. Accordingly, Plaintiff has failed to come forth with evidence from which a jury could reasonably render a verdict in his favor on his claim for deliberate indifference to serious medical need in violation of the Eighth Amendment. The Court will recommend that Defendant's motion for summary judgment be granted, and judgment be entered.[7]

## IV.

## RECOMMENDATIONS

Based on the foregoing, it is HEREBY RECOMMENDED that:

1. Defendant's motion for summary judgment, filed November 3, 2025, (ECF No. 65), be granted; and
2. Judgment be entered in favor of Defendant Dr. Conanan.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the Court, limited to 15 pages in length, including exhibits. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may result in the waiver of rights on appeal. Wilkerson v. Wheeler, 772 F.3d 834, 838-39 (9th Cir. 2014) (citing Baxter v. Sullivan, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **July 30, 2026**

STANLEY A. BOONE
United States Magistrate Judge

---

key question is whether Dr. Conanan knew of the serious risk and consciously disregarded it. Without the subjective knowledge, even a serious condition and refusal to refer may not rise to the level of deliberate indifference.

[7] Because the Court finds Defendant Conanan is entitled to summary judgment on the merits of the Eighth Amendment claims there is no reason to reach whether she is entitled qualified immunity.